In this case, the court is being asked, essentially, to find that a slight misstep at the time of the filing of this complaint and the risk in this action bars forever the plaintiffs from alleging their state law claims. And by that I mean if counsel – and I was not that counsel – had filed 12 separate lawsuits based upon the individual loan transaction, seven of them never would have even potentially been before a federal court, for the simple reason that there were not in excess of 50 lenders who participated in those loans. Counsel, are you seriously contending that this wasn't an attempt by the plaintiffs to get around Shlusa? The initial complaint probably wasn't. This one? The complaint that I filed, yes. And how about this one? Yes, sir. It was. Okay. So you were trying to get around Shlusa. Well, I believe that – I believe that Shlusa doesn't apply because of the fact that the cover security requirements of Shlusa are not alleged. But I think it was – it's clear that if a plaintiff or a group of plaintiffs less than 50 want to plead or avoid Shlusa, that that certainly is their right under the statute. And that's really not an issue here. I mean, the reality is Congress has made a determination for its own reasons to bar these types of actions when they're brought in concert. You chose to bring this in concert. Are you contending that Congress didn't have the right to regulate this? Are you challenging that? No, Your Honor. I guess what I'm saying is, is that, is that if a complaint can't – if a complaint or a series of complaints can be brought that are outside of Shlusa, that a plaintiff or a group of plaintiffs should be allowed to proceed on that basis. But, again, you're – it seems to me you're denying the right of Congress to regulate the way it did, because you didn't plead it that other way. Had you done what you just talked about, then we probably wouldn't be here. But that's not what you did. You brought it all together, and the trial court concluded that it was within Shlusa. Is there any doubt of that? Well, I think that the second amended complaint was an attempt to disaggregate what had originally been an aggregated complaint. And the question – I believe that that's a – that the case law allows amendments. Shlusa didn't. That's – I want to ask you about that. You say the case law allows amendments. There is, of course – there are some district court cases, but can you point to any Ninth Circuit case that allows amendments under Shlusa? The Falkowski case allowed amendment under – under a Shlusa case. Do you think that's an appropriate thing that counsel for the defense argues? And I'll ask them about it when they're in front of us. They argue, in effect, that the intent of Congress here was to avoid prolonging these kinds of cases. If you fit under Shlusa, you just can't proceed with it. And that being able to continually amend the complaint, albeit under the discretion of the trial judge, just prolongs this. Why should a defendant, where the case has been removed to the district court under one set of facts as pled in that particular complaint, be allowed to amend the complaint to, in effect, change the whole scenario? Well, I don't think, Your Honor, it's a question of amending the facts. It's essentially, as I view it, Shlusa is a procedural matter, not a substantive matter. And by that I mean it – and that raises the issue of whether a dismissal with prejudice on a procedural issue is appropriate. But it seems to me that Shlusa essentially says, and Congress had the right to say this, I'm not contending otherwise, that if an inappropriate number of people get together to advance a claim that's as a defined in Shlusa, that that's not permissible. Okay? But if the case can be set up in a different fashion, and the starkest example of that is perhaps the Spihar case, where the court allowed, you got 52, you go, you know, you can wipe out two, I guess, and get to 50, and you're in court. That doesn't – why would Congress be offended in that circumstance? Congress didn't say that the general rule announced by this Court, by the Supreme Court, that a plaintiff is allowed to amend until such time as it's clear that no claim can be stated. And who's saying that? That's – I think that's basically – that again is in the Falkowski case. That's the Supreme Court rule. And I – the Falkowski case – But that case has handed down before Shlusa, hasn't it? No, it's post-Shlusa. Post-Shlusa. And was it – you're arguing that they were construing Shlusa? There was – part of it constitutes Shlusa. Part of it – the part relating to the rule relating to the right to amend related to a case – contract claims that were asserted in the same complaint. But I think the general rule is fairly well established, and there's a Supreme Court case on which the Ninth Circuit relied. I forget the exact name. But the rule is, is that if the plaintiff can state a claim – or stated backward. A motion to dismiss is appropriate only if the Court is convinced that no claim can be stated. Now, if the Court's asking the question, should the Court allow serial amendments and instead of essentially dismissing without prejudice and saying, okay, we'll dismiss without prejudice, if you can refile in State court and avoid Shlusa, go ahead and do it, I'd say, well, then give us that opportunity in this case. But it seems to me that if this Court is essentially holding, or were to essentially hold, that if the filing of one complaint casts in concrete forever the plaintiff's rights to bring their State court claims, then that's a misreading of Shlusa and a misreading of the rights under the Federal Rules of Civil Procedure. Kennedy, where do you – what part of Shlusa would you cite that would back up what you just said? Well, I think there's two things. One of which is the statute itself says only if you have an inappropriate or, you know, more than 50 claims aggregated are the State law claims barred. Right. The second thing is the – is actually the recent Supreme Court decision in probably mispronounced the name Dabbitt, where the Court emphasized or did note that it – Shlusa is not equivalent to ERISA, which talks about the – whether State law claims are allowed to exist in – when there are Federal claims that mirror it. It said we look at Shlusa differently because it's not – Shlusa doesn't say State law claims can't be brought. Shlusa only says you can't put too many together. And so there – it seems to me that the logical outgrowth or what necessarily follows is if parties can proceed without going over that unacceptable threshold, they should be permitted to, and that that's exactly what Congress said. They didn't say that all – and maybe they could have, maybe they couldn't. They didn't say all claims that are based upon deceptive conduct and in connection with covered securities are barred. It was only this aggregation factor, and I think that's the reason why plaintiffs should be allowed to proceed if they do not go beyond that aggregation. What I'm trying to understand, and I'll let my colleagues say something here in a second, I – here's a case that got filed in Nevada, was – Arizona. I'm sorry? Arizona. I'm sorry. Eventually, but it was previously filed in Nevada, was it not? No. Perhaps the Court's confused. There were two cases. One was a class action security case. Right. And that was filed in Nevada. Weren't those – didn't it involve the same people, same allegations? No. No. No identity of the people? No identity of the – Aren't the defendants the same? Defendants are the same. I'm sorry. Okay. Well, all right. I'm sorry. So different players, same game? No. Different – the Nevada case involved the claims based upon the purchase and sale of listed securities. I understand it was pled differently, but basically, the loss – what happened was the – the genesis of both cases arose out of the same basic set of facts. They were pled differently. You went to Arizona on this case, but you did that, did you not, because the first case was not successful? I had no – You had no role in it? No. No. I – no. My – maybe I should step back, Your Honor. My clients did not purchase securities. I understand. They were holders. They made a loan. Mm-hmm. They are – they made 12 loans. Mm-hmm. They were not in the national security market. They had nothing to do with the Nevada securities case, which has previously been before this Court. Mm-hmm. There was – so the – I mean, they're not even – they're not even close. The similarity is, is that the same information is alleged to be the same – is alleged to be the deceptive conduct. But, you know, there is nothing really. So can you – can you represent to the Court that the plaintiff's counsel in the one case did not work with your firm in connection with the filing of the Arizona case? Your Honor, I have to – I have to represent one thing, which is I didn't file the initial case, so I don't – I don't really know. Based upon – I mean, I didn't file the first complaint in this case. I understand. But I can represent to this Court that except for, I think, a two-minute telephone call, I have never spoken with anybody connected with the Nevada case. And it's my understanding and perhaps belief that counsel in – who did file this case may have talked to, you know, about the – the substantive allegations regarding the deception. But I have no personal knowledge of that. But there's no over – the case – I can represent that the genesis of this case was not the – from the Nevada – the lawyers who filed the Nevada case. Totally – totally separate. The one that you filed. The one that I'm representing there. Right. Because, as I said, there were separate counsels that filed the initial Arizona state law complaint. I substituted in approximately when they – when they were disqualified. They were disqualified? They were disqualified because they had – somebody in their firm had represented one of the – Oh, it's conflict of interest. Okay. Yeah. Conflict of interest. Yeah. It was a conflict of interest. So I think – yeah. It's totally different. And I think that the key thing, Your Honor, is that – and why this case really is different from the Nevada case or most all of the cases that have ever been considered is the issue of whether these are covered securities. Counsel, what are you going to do with Dabbitt? Well, I think Dabbitt doesn't apply at all in this case. Well, Dabbitt seems to indicate that we're to give a fairly broad construction to SLUSA, and it appears to apply even in cases where you do not have purchasers of securities. Your plaintiffs, admittedly, are not purchasers of securities. But they do rely upon a broad allegation that misrepresentation in the – affecting the price of stock and investment would affect people who are interested in purchasing securities a damaged step. They would not have made – they would not have loaned this money to the mortgage companies if they had known that they were misrepresenting and thus inflating the value of their stock. Okay. I understand that argument. I think there's two answers, Your Honor. One is, is that my clients have to be holders of covered securities. Okay. And the in connection with does not wipe out the requirement that they be a holder of a covered security. If they are not a holder of a covered security, this SLUSA doesn't even apply. And I've gone through the litany and pointed out there are eight instances, for example, where you have fraud in the inducement, which is not a SLUSA claim or SLUSA cause of action. We have instances where there is no national issuer that ever signed the note. That's not a SLUSA cause of action because you don't have a covered security. But then let's go to DABIT itself. DABIT says, in construing in connection with, you don't have to have the actual act of the purchase and sale of the covered security to satisfy the in connection requirement. But what are the transactions that are holding transactions that are alleged in this complaint? One, there's a series of allegations that the fraud induced them to sleep on their rights with regard to collateral. Sleeping on your rights with regard to collateral has nothing to do with the purchase and sale of a security. That has to do with liquidation of collateral. There is one instance, I believe, where the allegation is that there was a delay in enforcing a guarantee, that that was a consequence of the misrepresentations. Delay in enforcement of a guarantee is not something in connection with the purchase and sale of a security. These are acts which are totally outside of what the court in DABIT said, which was that SLUSA was to regulate the national securities markets. It says, a covered security is involved in the national securities market. Your Honor, these are garden variety real estate loans. No deed of trust construction loan. This is not a national situation. So DABIT actually, one, is irrelevant, and two, supports the plaintiff's position by noting that this is a national issue. And secondly, in response to Justice Smith's comments, that it is a procedural case matter, not one that is a subsniff, i.e., sort of a RISA kind of matter. If I could reserve the balance of my time for Rebuttal, I'd appreciate it. Thank you. Good morning. My name is David Furbush. I represent the individual defendants in the case I'll be presenting the argument for the appellees. Merrill Lynch v. DABIT dramatically simplifies the analysis of this case and compels the conclusion that the judgment below should be affirmed. DABIT was a case brought by a broker for Merrill Lynch. He claimed that the – that Merrill Lynch's research department had issued biased analyst reports, that that had had the effect of inflating the stock price of the companies that they were writing about. He said that he alleged two harms to himself and to a class of other fellow brokers. One, that they allegedly held on to shares that were recommended by the analysts. And secondly, that when the customers of Merrill Lynch, who he was working with, discovered that there had been this biased research, that they took their business elsewhere and he lost income. That second claim has nothing to do with his purchase or sale of securities. It's a – you know, it's a contract claim that I didn't get the income that I should have gotten working here as a broker. What – what DABIT tells us is that it is sufficient if the alleged fraud is in connection with somebody's purchase or sale of securities, but it does not have to be the plaintiff. In that case, the Court said the – the identity of the plaintiffs does not determine whether the complaint alleges fraud in connection with the purchase or sale of securities. The misconduct of which Respondent complains here, fraudulent manipulation of stock prices, unquestionably qualifies. I love the word unquestionably. That – that – the – this is the identical situation to what was pled in this complaint. The allegation was that Saxton filed false and misleading SEC filings, that it issued false and misleading earnings releases and financial press releases. Those are quintessentially the types of communications to the market that are thought to influence the stock price of a publicly traded company, quintessentially the types of communications that are relied upon in Federal securities fraud actions that are subject to the PSLRA. And, in fact, all of the allegations in this complaint were copied verbatim from another complaint that was unquestionably a Federal securities fraud class action subject to the PSLRA. How much counsel – how much – what percentage, if you can estimate, of the complaint filed in this action was copied verbatim from the Nevada action? Every single statement that was alleged in this complaint to be false or misleading was copied verbatim from the Nevada complaint. And that – can you estimate how many paragraphs that would be? Dozens. Dozens, okay. Yes. The – this is a – this complaint was supposedly brought on behalf of lenders to Saxton. You know, there's a lot – I mean, I'm not going to get into what I think are some of the factual inaccuracies in the allegations, but what was alleged was that these people were lenders to Saxton. But what a strange complaint for a lender to file. It nowhere alleges reliance on the typical things that a lender would talk about, like a loan application or some direct communication from the borrower. Instead, it relies – and relies exclusively on the SEC filings, again, you know, with the purpose and effect of informing the public shareholders and the earnings releases. So this is a case that is on all fours with David. And I don't think there's any escaping the conclusion here, as in David, that this is unquestionably in connection with the purchase or sale of securities. Counsel, I wonder if we could turn for a moment to the amendment of the complaint. You perhaps listened to the colloquy I had with your opposing counsel about that issue. There are, of course, some Ninth Circuit's circuit cases – I mean circuit, but district court cases – that have permitted amendments. I know in your pleadings you claimed that it's inappropriate to permit amendments of complaints that were the basis of the removal jurisdiction. Would you address why you think it is inappropriate? What did Congress have in mind about this, if anything? Yes. I will address that, but before I do, I want to say that with the guidance of David, which we did not have when we briefed that issue, the amendment makes no difference whatsoever. I mean, I could stand here now and concede he was free to amend, and it would not make any difference at all under David, that both complaints under the David analysis are equally in connection with the purchase or sale of a security and are equally subject to dismissal under SLUSA. However, to answer your question, the case law suggests that once a case is properly removed under removal jurisdiction, that it is inappropriate to permit an amendment that would undo that jurisdiction, that you can't unring the jurisdictional bell, I think was a phrase we actually used, that would be designed to undo the preemptive effect of the removal jurisdiction would be inappropriate. Now, the amendment that the district court offered, the opportunity to make, was not one that necessarily would have taken away Federal court jurisdiction. The district court did not give a lot of explanation, but in its order it said, the last sentence of the order denying the motion to remand, it said, well, the plaintiff may file an amended complaint that conforms with the PSLRA and SLUSA. Now, what I believe the Court was inviting the plaintiff to do, if it could, was to file a complaint for violation of the Federal securities laws. There had been a lot of discussion about it. The Court had actually concluded that, at least the way they pled it, that these loan participation interests were securities. And so it, you know, might be possible if they wanted to and they thought they could, to allege a cause of action under the Federal securities laws. They chose not to do that. They chose to go in the opposite direction. Their amended complaint says time and time again, this is not an action under the Federal securities laws. We do not want to bring an action under the Federal securities laws. This action is limited to State law claims only. Now, I thought I heard Mr. Lazar say something surprising when he was addressing this issue of his amendment. I thought I heard him say that he was trying to break this up into a bunch of separate smaller lawsuits which had less than 50 plaintiffs in them. But that's not what the amendment did. The amendment still had 500 plaintiffs in the same complaint. So I don't understand what he's talking about, really. Roberts. I'm a little puzzled. As I look at the form of SLUSA, it seems to make sense to me that Congress would want to say, look, we're not going to allow piecemeal litigation of securities actions, and we want them all in one forum, and we want that in a single forum, and we're not going to permit suits in State courts. What I don't understand is why Congress would allow or at least not preempt suits filed in State court if they involved fewer than 50 plaintiffs. It seems to make sense. I understand why Congress might say, look, if you only have one plaintiff, it's likely that what you've got is a complaint that my agent misled me. I talked to my broker, and my broker's lying to me over the phone. I want some kind of disrepresentation without saying ABC Corporation has inflated its stock beyond all reason and has got accounting errors that are fraud under Federal law, State law, and every principle of law and on demand. I mean, I've been practicing securities litigation, you know, for a long time. And so I was practicing when the Reform Act was adopted. Up until that time, all the, you know, all the shareholder class actions were filed in Federal court. It was almost unheard of to have a shareholder securities class action filed in State court. After the Reform Act raised the standard for pleading, particularly Scienter, all of a sudden there was a rush to the State courthouses, and class actions were being filed, that essentially made the same factual allegations as used to be made in Federal court, but instead of claiming a violation of the Federal securities laws, they would claim violation of California Corporations Code sections that might prohibit similar conduct. They would plead common law fraud, et cetera. Roberts. Are any of those State actions, would any of those State actions be collateral estoppel as to any issues that might be brought into Federal securities action? In other words, if you have an action brought in California, in California State court that successfully remains in California State court, and there's a finding that ABC Corporation has misrepresented these certain facts, does that have any effect on Federal litigation that might be brought someplace else? You know, I'm not the world's greatest expert on collateral estoppel, and I think what you're referring to potentially is offensive collateral estoppel. But, you know, my understanding of the doctrine is, is that if a party has a full and fair opportunity to litigate an issue, and it's resolved against them. I think I might be more concerned with offensive collateral estoppel, that is plaintiffs in a Federal action seizing a finding against ABC Corporation in a State proceeding. I believe there are situations where that could occur. That would seem to make sense, that Congress would want to preempt those kinds of things. If so, then I don't understand why they cut the threshold at 50 plaintiffs. I think what Congress was concerned about was this new phenomenon of class actions in State court. Their view was class actions, you know, we've not seen this phenomenon before. An unintended consequence of the Reform Act is all these class actions suddenly shifting to State court. That's not what we wanted to have happen. Class actions, if they're going to be class actions, they're going to have to be brought in Federal court. I think they wanted, they understood, however, that there were traditionally many fraud actions that were not brought as class actions, where there might be privity between the parties. Let's take the example of a bank lends to Saxton. Let's say that the bank relies upon a number of things, but one of the things the bank relies upon is the SEC filing. I mean, I know banks ask for that kind of information when they're extending a loan to a public company. They look at it, they make the loan, and they later discover that there was something false in the SEC filing that they relied upon in making the loan. That bank might want to sue not only for breach of contract, but for fraud in State court. SLUSA permits that because it's not a class action. SLUSA wanted to permit kind of the traditional State law remedies to, you know, to continue in the non-class action context. You know, however, I mean, we can't just think about what Congress intended. We also have to think about what did Congress write. And, you know, the threshold is very clear. You know, it's 50 plaintiffs. Here we had 500. Okay. We're 10 times over the threshold. There was no – there's never been any suggestion by Mr. Lazar that he wants to, you know, break it up into smaller separate lawsuits. If he does want to do … But this lawsuit could go forward if we had fewer than 50 plaintiffs. If Mr. Lazar today or at any time in the past wanted to file a lawsuit with less than 50 plaintiffs and the other numerosity requirements weren't met, I mean, a group of lawsuits, if they're all kind of coordinated, would – you'd have to aggregate the number of plaintiffs together. Okay. But let's say just three, five people decided to go into State court and file an action against anybody they wanted to. There's no way that would be covered by SLUSA. And it wouldn't matter what they were alleging, what kind of fraud, and whether or not it was something that affected the publicly traded securities, because they would be below the numerosity level. It's – Congress just simply decided that 50 was the limit. And again, this one is, you know, 10 times over the limit. Why do you read this decision in Gabbitt as broader than saying that you don't have to be a purchaser or seller, you can simply be a holder? Well, first of all, it simply doesn't say that. It says that it is – it says – it says Gabbitt – it says it is enough that the fraud alleged coincide with a securities transaction, whether by plaintiff or someone else. That's at 126 Supreme Court 1513. Again, part of Gabbitt's claim was that he lost income when the plaintiff customers of Merrill Lynch got mad about the bad analyst's work and went – took their business elsewhere. You know, that has nothing to do with his purchasing or holding a security. And the Court held that that claim was preempted by SLUSA. Everyone was a holder in Gabbitt, wasn't he? Well, Gabbitt attempted to define his class as individuals who were holders of securities. And that's how the Court really determined, is whether holders were like purchases or sellers, or holders were covered in addition to purchases and sellers. The Court said it doesn't matter if you're a purchaser or seller or holder for what If your claim is – as I said, I just – fraud in the connection with the purchase or sale of a covered security, even if the purchase or sale are made by someone other than you, then your claim is preempted by SLUSA and must be dismissed. And in that case, the allegation, similar to this one, was that the conduct that was complained of affected the market price of the publicly traded securities, whether or not Gabbitt or any of his class members traded in that market. Thank you. As counsel admitted, it's not unreasonable for a lender to rely on federal filings in making a loan. If the Court adopts essentially the reading of Gabbitt that's being argued here, if there are more than 50 lenders on any one loan, they could never sue for fraud in the inducement. That decision is wrong for two reasons, one of which is that for a covered security to exist, it has to exist at the time of the misrepresentation. Most of the claims here are – eight of them, eight of the loans – are fraud in the inducement claims, and those are not even arguably covered under SLUSA. No, Your Honor, let me go to that point. If the Court had dismissed without prejudice, my concern is that some court down the road may find that the dismissal with prejudice in this case was a dismissal on the merits rather than a procedural dismissal. And I just point that the case – that one of the cases upon which defendants rely, the Rowaninsky case, which is a Third Circuit court, specifically notes that the court's – the district court's dismissal was without prejudice. I don't – I'm not going to play – I'm not trying to play hide-the-ball. And we're not – if this case had been dismissed without prejudice under Arizona Savings Statute 12-504, I would have six months on the seven cases that would never come within SLUSA to refile them. So, I mean, the reality is, Your Honor, some of the cases that have been dismissed without prejudice have been refiled under SLUSA. And SLUSA is a – is an argument against – is something that prevents aggregation. Counsel, who filed the complaint? Why didn't you just file this as a separate suit? I didn't make that decision, Your Honor. And did you argue to the district court to ask him to go back and dismiss it without prejudice so he could refile? Or have you argued to our court that it was an abuse of discretion for the district court to dismiss it without prejudice – to dismiss it with prejudice? I argued that it was an error to dismiss with prejudice. Could you address for just a moment that I had asked opposing counsel about the comparison between the Devada complaints and your complaint? Now, I know what you said before, but I just want to be sure what you understand. And he – he alleged that there were dozens of allegations regarding the alleged fraud that were incorporated into this complaint. Can you represent to the court your knowledge as to whether that is true? That is true. And where did those – where did those come from? Did you get them from somewhere else? No, I – Your Honor, I'm not going to miss – I'm not going to represent that the allegations of this – the allegations of the false – the deceptive conduct were not essentially identical in the two complaints. Okay, because that's what I'm trying to – when you first addressed my question, my impression was you were saying, well, I don't know anything about that Nevada case. I had nothing to do with it. Somebody else filed the original Arizona action, and I just – I just took over. On the other hand, I'm understanding that your opposing counsel suggested that the charging allegations, at least with respect to the fraud, are identical in dozens of paragraphs. You're, I think, saying that may very well be true. Yeah, but all I'm saying – all I guess I – I thought I responded to the question. I didn't mean to mislead the Court. All I think what happened is counsel got a hold of the complaint, used that as a starter or the basis, if you will, for, you know – Did he just pick it up out of the fine law, or was it given to him by counsel that had handled the Nevada case, to your knowledge? I – I – if I'm – I think the correct answer is, Your Honor, that the – some of the plaintiffs were aware of the Nevada case and had gotten the complaint either from counsel because of the fact that, you know, they were involved with the Saxton matter, or they picked it up in some way. It wasn't – it wasn't in the newspaper. So I think that the – you know, I think that if the Court's concerned about the chain of transmission, I think that is it. But – What I'm concerned about is this. You know, Congress was trying to remedy a particular problem. And at least to this judge, it makes some difference if what you've got is a hide-the-ball deal where you have different – you know, looking for different jurisdicts and see what you can make work. What I understood you to say originally was, no, there's no way, man. This is – this is a whole separate deal. I'm understanding now that one way or another, the Nevada action, and certainly some of its allegations, are incorporated verbatim, apparently, in dozens of paragraphs. I think – I don't – I guess I'm not explaining the difference correctly, Your Honor. I didn't mean to represent that there weren't parallel allegations or similar allegations. What I meant to say and what I thought I said was that the circumstance – these plaintiffs in this case are not the plaintiffs in the Nevada case. I understand that. And that their claims are based upon transactions which are totally separate from transactions that were in the Nevada case. And it's my understanding of Saluza that the – it's the transactions that are key, not the deceptive conduct that is key. I'm sorry. I've gone over my time. Thank you. Thank you, counsel. Thank you, Your Honor. Case to assert it will be submitted.
judges: Reinhardt, Bybee, M.smith